# G. W. MACFARLANE v. R. CATTON.

## APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JANUARY 5, 1905.          DECIDED MARCH 27, 1905.

FREAR, C.J., AND CIRCUIT JUDGES ROBINSON AND MATTHEW-
MAN IN PLACE OF HARTWELL AND HATCH, JJ.

ACCOUNTING—*bill for, dismissed on failure of plaintiff to account.*

One of two co-agents for the sale of goods upon commission who
procures orders and receives commissions while excluded from the
agency by the other who conducts it alone under an honest belief
that he is sole agent, cannot require the latter to account in equity
without also accounting himself.

HE WHO SEEKS EQUITY MUST DO EQUITY—*application of.*

Equity cannot act arbitrarily in the application of this maxim
and generally will not as a condition of granting the plaintiff relief
require him to do what the defendant would not be entitled to as
plaintiff, but to the latter rule there are exceptions, of which the
present case is one.

### OPINION OF THE COURT BY FREAR, C.J.

This is a suit in equity for an accounting. The circum-
stances under which it arose are set forth more fully in *Fow-
ler & Co. v. Catton and Macfarlane,* decided this day. The
plaintiff and defendant were joint agents in Honolulu of John
Fowler & Co., (Leeds) Ltd., of London and Leeds, England,
until the end of 1893, and the plaintiff was sole agent after
February, 1899. Between those dates the defendant conducted
the agency alone and claimed to be sole agent with the con-
sent and acquiescence of both the principal and his former

co-agent. The plaintiff contends that the co-agency continued, and seeks to have the defendant account for the commissions received by him during that period. The commissions were certain percentages upon orders obtained by the agents, also upon orders sent to the principal directly by third parties without the intervention of the agents, and also upon sales of machinery consigned to the agents by the principal. The commissions received by the defendant amounted to about $28,000 for the period in question. During that period, more particularly during its latter portion, the plaintiff also procured orders for the principal and received commissions, the amount of which is not shown, but which may have equaled or exceeded the amount received by the defendant. The plaintiff did not offer to account for the commissions received by him but declined as a witness to state their amount until ordered to do so by the court, and then said that he could not tell without his books, which he believed were in San Francisco, and no offer or effort was made to obtain the books. At the close of plaintiff's case the circuit judge on defendant's motion dismissed the plaintiff's bill on the ground that, even if the co-agency continued during the period in question, the plaintiff could not require the defendant to account without also accounting himself, on the principle that he who seeks equity must do equity. In our opinion the decree should be affirmed.

The defendant no doubt excluded the plaintiff from the business during the period in question although he did this and continued the agency alone in accordance with what he honestly believed to be his authority and the rights of all parties. The plaintiff urges that inasmuch as the defendant wrongfully, as he contends, excluded him from the business, not only was he, the plaintiff, justified in doing what business he could on the outside, but that the defendant would be estopped from setting up a co-agency during that period and calling on the plaintiff to account for the commissions received by him and would therefore be estopped also from setting up by way of defense

that the plaintiff could not call for an account without also accounting himself. We will assume that if a bill for an accounting were brought by the defendant it could not be maintained.

In support of the theory that a defendant cannot rely upon the principle that he who seeks equity must do equity except where he would be entitled to relief if he were plaintiff, the plaintiff relies particularly on the statement of Vice-Chancellor Wigram in *Hanson v. Keating*, 4 Hare 6, that, "as a general proposition,, it may, I believe, be correctly stated, that a plaintiff will never, in that character, be compelled to give a defendant anything but what the defendant might, as a plaintiff, enforce, provided a cause of suit arose." That statement is correct subject to various qualifications and exceptions that perhaps may be implied from the use of the word "general," but apparently both the vice-chancellor himself and some subsequent judges and writers have been inclined to treat that statement as if the word "general" had been omitted. The vice-chancellor himself, however, not only showed, perhaps inadvertently, from the illustrations he gave that there were qualifications and exceptions to the rule, but in that very case reserved his conclusion and on further consideration about a month later applied the exception rather than the rule—upon the authority of the case of *Sturgis v. Champneys*, 5 Myl. & Cr. 102, in which Lord Chancellor Cottenham said, more broadly, that "this court refuses its aid to give to the plaintiff what the law would give him, if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which this court could not otherwise enforce." In view of this the vice-chancellor must be taken to have meant to give due force to the word "generally" when in the subsequent case of *Neesom v. Clarkson*, 4 Hare 101, upon which also the plaintiff relies, he said: "I think it may be generally said, that, unless the equity which the defendant claims from the plaintiff is one which the

defendant might enforce by bill, it is not a term which the court has a right to impose on the plaintiff." Indeed, an examination of the earlier opinion shows that what the vice-chancellor had principally in mind was that the court could not "impose merely arbitrary conditions upon a plaintiff," simply "because he stands in that position upon the record." These cases are discussed in Pomeroy on Equity Jurisprudence, Secs. 385-386 and notes, in which the author takes the position that the broader statement of the chancellor is the correct one and says that the narrower statement of the vice-chancellor "is expressed in somewhat too strong terms, and requires important limitations upon its generality," and illustrates this by various examples. The conclusion is reached that "the rule may apply, and under its operation an equitable right may be secured or an equitable relief awarded to the defendant, which could not be obtained by him in any other manner—that is, which a court of equity, in conformity with its settled methods, either would not, or even *could* not have secured or conferred or awarded by its decree in a suit brought for that purpose by him as the plaintiff." In *Otis v. Gregory,* 111 Ind. 504, also relied on by the plaintiff, in which the court cites with approval the opinions above referred to of Vice-Chancellor Wigram, the court recognized that "there are cases which do not seem to fall within the foregoing principles" and cited the sections from Pomeroy above referred to. As a matter of fact, the court held in that case that the plaintiff should give the defendant the desired relief as a condition of having relief herself, holding, however, that the defendant would have been entitled to relief if he had been plaintiff. To the examples given by Pomeroy may be added that of a case in which a plaintiff may be required to grant the defendant relief even though the latter would be prevented by the statute of limitations from asserting his claim as plaintiff. *DeWalsh v. Braman,* 160 Ill. 415, citing Pomeroy with approval.

The plaintiff could not rightly solicit orders secretly and collect commissions thereon to the exclusion of the defendant

any more than the defendant could do the same openly to the exclusion of the plaintiff. If the plaintiff had accepted the defendant's theory of a dissolution of the co-agency, the payment and receipt of commissions obtained by him would be a matter between him and his principal, but proceeding as he does upon the theory of a continuation of the co-agency he cannot do business properly appertaining to such agency for his own private benefit and then call upon the defendant to account for his commissions without also accounting himself. That would be to seek equity without doing equity. The rule works both ways.

The decree appealed from is affirmed.

*Robertson & Wilder* for the plaintiff.

*Holmes & Stanley* and *Kinney, McClanahan & Cooper* for the defendant.